Alright, so Mr. Egan, you've reserved two minutes for rebuttal. So that gives you 8 minutes out of the gate. Judges are ready. We can proceed. You may begin. Good morning. James Egan for Timothy Schleede and may it please the court. As interpreted by this court, the Fourth Amendment permits police officers arresting a person outside of his home or hotel to enter the hotel without a warrant when they have a reasonable belief that 1. another person is present and 2. that that other person may pose a danger or destroy evidence. The officer's words and actions at the time of the search in this case indicates that they had no such belief. Lacking either a warrant or requisite suspicion, officers used key cards taken from Schleede, entered his suspected room, and discovered evidence of his suspected drug operation. Well, I mean, it seems to me that inevitable discovery, I guess, would obviate some of the other arguments you've made. Do you agree with that? If we were to find that there is inevitable discovery here, that doesn't then much matter about the protective sweep or the good faith of the officers? To a point, Your Honor, yes. Inevitable discovery is an exception to the exclusionary rule that would Maybe we should start there and sort of work our way out. But from my read of the record, it seems like the officers were already seeking a warrant at the time that the protective sweep occurred. Is that right? They had investigator Stock, who was the leader of the operation, had left after the controlled buy and had begun, I suppose, preparing a warrant application at headquarters. Correct. So is there anything in the warrant that relied on things that were observed during the protective sweep? Yes, Your Honor. It's two ways. The first, the key cards themselves that were seized from Mr. Schleede upon his arrest at 918, approximately that evening, were used by the officers, primarily Officer Leonardo, to enter room 304. And by doing so, they confirmed that Schleede was using that room as a base for his drug operation. But the officers had already obtained from the hotel Schleede's room number, which was 304, right? They had information from the hotel staff that Schleede had rented room 304, but they, at that point, weren't sure that he was using that room to store additional supply, which they learned by entering the room to conduct that initial search. But they were already seeking the warrants of room 304 before the search, right? That's correct. Before the protective sweep. They certainly had begun, but as I understand the word seek, as used by the Supreme Court in Murray, that really is the culmination, providing it to the, applying to the magistrate and seeking the magistrate's approval. That is how the word seek is used there. So that they had begun to sort of take the initial steps to get a warrant is not dispositive. But you distinguish between the inevitable discovery rule and independent source in your brief. And I'm looking at, I was thinking of this in terms of independent source, and I could not identify anything in the warrant application that relied on material derived from the protective sweep. And so I had kind of set aside the notion that we had to determine anything about the protective sweep. Because we could, if it were the case that the warrant application were not reflective of anything from the sweep, then it is pure and it clearly satisfied the probable cause standard. And I understand you're focusing just on the fact that although they had learned about that he was in room 304, that the key cards, two of them ultimately worked on 304. That seemed to me ultimately kind of irrelevant to whether they were entitled under the warrant to search room 304. Because the warrant application was distinct from the protective sweep entirely. What's wrong with that way of thinking about it? Sure. So the warrant application states in paragraph three, I believe, that, I'll pull it up here in a second. That three key cards, I'm sorry, paragraph two, it says, a search of his person, it's midway through this paragraph, a search of his person, incident to arrest, revealed Schleid was in possession of $80 currency and three electronic key cards to access room 304 of the residence in hotel. And then during the suppression hearing on page 137 of the appendix, investigator Stock confirms that he learned that information from officer Leonardo, who conducted the protective sweep. And that basis of that was the- Excuse me for interrupting, but weren't those key cards seized from him when they arrested him? And hadn't they learned that he was in room 304 from the hotel? So what did they learn from the protective sweep itself that tainted this application? They learned that, in fact, Schleid was accessing room 304 to supply customers. That just because he had rented room 304 doesn't mean that that was the only room in which he could have kept additional supply. But why is that relevant to the legitimacy of the warrant to search room 304? Because it confirms that he has in his possession key cards for that room. So it connects him directly to that room, whereas before- I'm sorry. Go ahead. I mean, are you suggesting that there wasn't probable cause without those key cards? I'm suggesting, yes, that the probable cause may have been sufficient. But even if it wasn't, the officers were concerned that it wasn't. And that's why they included that information in the warrant application. That's why they conducted the protective sweep to confirm what they had only suspected at that point and perhaps suspected that they didn't have enough information on, which is that Schleid was connected to that room and was using it for his base of operations. And that's the second- They just need probable cause to go in there. So at the time that they got the warrant, independent of the key cards they had, the fact that he was engaged in a hand-to-hand with an informant, that he was seen going in and out of this hotel, that he was seen going to the third floor of the hotel, they knew that he was in a room on the third floor in room 304 from the hotel manager. And there was reason to believe that there was an accomplice, right? Well, I don't agree with that. It's the last point that you threw in. I mean, I think that that was added later post-operation. It's nothing in any of the records or documents, the search warrant application itself. Why wouldn't they include that in the search warrant application if they were certain about it? Okay. So putting that fact aside, your view is that the facts that I just recited are not sufficient to establish probable cause to search room 304? That's the argument, Your Honor. But even if they were, Your Honor, the second step in Murray requires that they would have sought a warrant had they not conducted the illegal search. In that case, we believe that they would not have because- Even though they were in the process of getting a warrant even before they arrested Schlieff? Right. Officers were clearly concerned about the level of suspicion that they had. It had taken two hours since the initial controlled by, an hour or so after- So they were waiting for backup, right? Well- Because another buyer arrived and there were a number of people involved. They have a duty. Does that vitiate really the probable cause and the state of the warrant application that they were slow? Well, there were six officers at the scene. They arrested Schlieff and a female buyer. Additional people arrived after the protective sweep, actually, and the female officer arrived after the protective sweep. So those arguments are red herrings. They're not relevant. Now- But what is in the record to suggest that the officers would have abandoned the warrant effort for the key cards? I don't know that it's quite phrased that way in Murray, but I think the evidence is that Leonardo, in communicating his findings to Stock, who's applying for the warrant, that they found that the key cards worked and during the search they saw glassine envelopes of the type they suspected Schlieff was dealing, confirmed that they didn't believe- they were concerned they didn't have enough evidence and that waiting around would not have been productive. They had already been there two hours. After 11 o'clock, they're concerned potentially that this is going to drag out indefinitely. Why not just make sure this is worth the effort? All right. Well, you reserve two minutes for rebuttal. Thank you. We'll now hear from Mr. Desange. Am I saying that right? Yes, thank you. Great. Okay, Mr. Desange, you have ten minutes. Thank you, Your Honors. I think I agree that the simplest way to resolve this case is to look at whether if you- assuming the protective sweep is invalid, whether there is still probable cause, if you excise information in the warrant application for the hotel room that arguably came from the protective sweep. And I think it's clear for the reasons the court has already stated that there was PC to search room 304. You had two apparent drug transactions that had occurred in the parking lot. You had officers watch Schlieff exit the hotel. Then after the first controlled purchase, there was an officer who- and this is in the testimony- followed Schlieff up, watched him, heard him go into a room on the third floor, as the court has already noted. Before the controlled purchase, they had information from the hotel management that he was in room 304. And excising the fact that the key cards worked for room 304, they still found him with three hotel key cards on his person. What should we do with the fact that they didn't disclose to the officer from whom they were seeking the warrant that they conducted this protective sweep and that officers remained in that room for a period of time? You know, I think that goes to whether we can rely on the good faith exception, if you get to that question. I think here- They didn't have any duty to disclose the full circumstances to the issuing officer? I don't think so, because for the reasons that I think it was not- it wouldn't have been clear to an officer under these circumstances that the protective sweep, the entering of the room under these circumstances, was illegal. The case like Riley that a defendant relies on involves a much more obvious effort to avoid- to both rely on information that was obtained from the illegal conduct. In that case, they saw marijuana plants. They didn't disclose that they saw them by standing or entering the curtilage of the home. Here, that information was not included in the application. They weren't trying to rely on information that they would have had reason to believe was illegally obtained. And for the reasons we argue in the brief, I think it's a- at the very least, a close call whether this was a valid protective sweep. The district court found- credited the testimony of the officers as the reasons for the delay and for staying in the room. Under these circumstances, I don't think it's obvious that what they were doing was illegal. So in that reason, I don't think a warrant application requires you to disclose all the various investigative steps that led up to the information you're presenting in the warrant, especially where you don't have a- it's not obvious to the officers that it would have been illegal. And again, I think that the question of whether we can rely on good faith is a question that I think the court does not need to get to eventually as well because I think it's fairly obvious that the warrant applications would have had established PC if you take out the one little fact that the key cards accessed room 304. He was found with the key cards. They saw him or they observed him and heard him going on the third floor and they knew that he was in room 304. And he conducted these drug transactions after exiting the hotel, so- Well, is there anything even wrong with the key cards? I mean, the key cards were taken off his purse. Right. Right, so nothing wrong with that being in the warrant. And if they just checked to see if they clicked the lock or opened the door to a room, is there anything improper about that? Your Honor, I think that's an unsettled question. I think that's- we didn't kind of focus on that because I think the law in the Second Circuit right now is not settled as to whether testing a home key in a private residence would be a search. I think the court has not reached that conclusion in a number of cases. But here I think the argument can be made that a hotel key is- there's less of a privacy or trespass interest in testing, touching a key card to the outside of a door, especially when you could find that same information by going downstairs to the management and asking them to read the key cards. I think it may be part of the expectation of a hotel guest that the information that they have key cards for room 304 or for a particular room is not kind of a private piece of information. The management has that. But again, I would agree that I think it's an open question at least whether there was even any kind of search here by testing and using the key to open the door to the hotel room. Just quickly, as far as the warrant for the- the second warrant for the storage unit, again, even if you were to find that there was a problem with the first warrant and even taking out the information that they gained from the search of the hotel room, there was still probable cause to look- to find and to search the storage unit. That information about the storage unit- Did we even get there? I mean- I don't think you need to. Was the search of the storage unit preserved in the plea agreement? Your Honor, I think it was- that's a good question. I think it's- The protective sweep of the defendant's hotel room was reasonable in both scope and duration. The evidence seized from the defendant's hotel room was admissible pursuant to the inevitable discovery doctrine and the investigating officers acted in good faith. Those are the three issues that were preserved on appeal. It wasn't clear to me that the storage unit is even on the table. They get to that if you take away- I think the argument is if you take away the information from the hotel search, the search of the storage unit is the fruit of the poisonous tree. Well, but the point is that you have to preserve appellate issues pretty explicitly when you are pleading guilty. So if there's going to be a reservation of an appeal, you have to say what those issues are. Correct, Your Honor. I don't want to fight the court too much on this. I would agree with that. We did raise another argument as far as the protective sweep, that the language of the waiver may not be read to cover the legality of the protective sweep, at least in its inception. But I understand the court tends to interpret plea agreements in favor of defendants when there is a close call like this. But I won't belabor these points. I think the court is well versed in the facts, and I think the appeal here should be decided on the basis of the validity of the search warrants, even excising the one piece of information that arguably came from the protective sweep. Should we be concerned, though, about the officers remaining in the hotel room after the protective sweep? They're there for 40 minutes, and the explanation seems to be that they didn't want to be seen leaving. But on the other hand, other officers were wandering around and seemed to belie that reason. I think it was more, Your Honor, a testimony of Investigator Leonardo. He was concerned with a potential confrontation outside the hotel room in a public hallway where there's lots of guests who potentially are moving through this. He thought it would be better if someone were to come into the room, they were able to protect the evidence, but also not create a situation in a public space without kind of containment. But weren't there other officers in the public space? Coming back and forth, carrying duffel bags. I think it was a calculated risk to have them come through briefly. And if you look at the affidavit in support of the application for the search warrant, it explains how the room is situated. It's very close to the stairwell, so it could be a very quick way to come up the stairs, enter the room, and leave. So I don't think they were, it wasn't as if the officers were standing around the door outside waiting for someone to come up. They were moving in and out quickly. And so I think in that situation, the officers, I think, reasonably believed that that was less of a risk than waiting outside and having someone come up and then potentially flee, or for various reasons, you don't want to have that conversation happen in an open hallway like that. Okay, thank you. Thank you. All right, thank you. Mr. Egan, you have two minutes for rebuttal. Thank you. Judge Carney, maybe I misheard you, but I think that Officer Leonardo did disclose the protective suite, the initial search of Room 304 to Investigator Stock, who was applying for the warrant. But Investigator Stock didn't disclose that to the magistrate. I was focusing on the latter. Okay, thank you. Thank you. Okay. As far as the government's claim about probable cause, they don't address the second prong of Murray, which is whether the officers would have obtained, continued to obtain a warrant and executed it absent that initial search. And as I said before, I think Officer Leonardo's communication with Investigator Stock claimed that they were concerned about the level of suspicion and whether it was worth sticking around. So I think that demonstrates that they didn't meet that second prong. I didn't appreciate the stairwell location in the record. As far as I understood, Officer Brooke, who was the person who was kind of in the stairwell during the operation and heard Mr. Schlicht enter a room, had to go around a corner. And so that makes me think that he wasn't just right there by the stairwell, that there was a corner to make. And anyway, entering and exiting room 304 with heavy equipment hardly puts the officers in a position of safety. I don't see what the calculated risk of bringing in RIP equipment is early. There are no more questions. I guess very briefly, if you could just address the issue of waiver on the storage unit challenge. It's not among the issues that's preserved in the plea agreement, right? Yeah. The plea agreement leaves much to be desired in terms of the clarification of the issues to be preserved. But generally speaking, the law in this circuit is that you've got to preserve appellate issues in the event when you're pleading guilty with some explicitness. And they were very explicitly laid out. There are three issues, but the storage unit is not listed, right? It's not expressly listed, Your Honor. I think it stems, as the government, Mr. Desange, indicates, I think it stems from that, both the protective sweep issue of the hotel and then it follows whether that search warrant for the hotel is untainted. Now, it would have been nice if it were also expressly laid out. It would have been nice if the good faith exception were made more explicit. And as far as the government's argument concerning the preservation of the protective sweep issue is concerned, there I think parties must have thought that the scope and duration, which concededly is typically thought of as different than initial justification, included the initial justification because Mr. Schley didn't make that argument concerning just the scope and duration. And the scope and duration by itself is not dispositive. And Rule 11 requires, as this court has held, only dispositive issues can be preserved. And scope and duration by itself, or even an assembly analysis, is not a dispositive issue. So I would encourage the court to read that plea agreement more broadly. And in the spirit of which the defendant would want to preserve all the issues he presented in the district court, it doesn't really make sense why he wouldn't. Those issues are dispositive. Except that our precedent is pretty demanding on that score, it seems. All right. Anyway, we will reserve decision. Thank you both.